UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

MAPLE LEAF FOODS,

        Plaintiff,

- against -

ULTRA GREEN ENERGY SERVICES,

        Defendant.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/3/14

OPINION AND ORDER

14-cv-267 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Maple Leaf Foods ("Maple Leaf") brings this diversity action against Ultra Green Energy Services ("UGES") for multiple causes of action, including: (1) common law breach of contract; (2) Uniform Commercial Code breach of contract; (3) breach of covenant of good faith and fair dealing; (4) action for accounting; (5) unjust enrichment; (6) promissory estoppel; and (7) punitive damages. UGES now moves to dismiss the entire Complaint for lack of personal jurisdiction or improper venue, or alternatively to transfer venue. UGES also moves to dismiss the following causes action for failure to state a claim: (1) common law breach of contract; (2) breach of covenant of good faith and fair

dealing; (3) unjust enrichment; and (4) punitive damages. For the following reasons, UGES's motion to transfer venue is GRANTED.

## II. BACKGROUND

### A. The Parties

Maple Leaf is a publicly-traded corporation organized and existing under the laws of Canada, with its principal place of business in Toronto, Ontario, Canada.[1] Rothsay is a former division of Maple Leaf.[2] UGES is a limited liability company existing under the laws of the State of Delaware, with its principal business address in Chicago, Illinois.[3] Maple Leaf and UGES have contracted with one another for the provision of Biodiesel ("Methyl Esters") since 2009,[4] and UGES maintained substantial operations in New York for a number of years.[5]

Maple Leaf alleges that UGES ceased all business operations in both

---

[1]    *See* Complaint (Compl.) ¶ 1.

[2]    *See id.*

[3]    *See id.* ¶ 2.

[4]    *See* Maple Leaf Foods Inc.'s Memorandum of Law in Opposition to Ultra Green Energy Services, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) or to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pl. Opp.") at 3.

[5]    *See* Reply Memorandum of Law in Support of Defendant's Motion to Dismiss or to Transfer ("Reply Mem.") at 4.

Chicago and the New York metropolitan area well before the Complaint was filed. UGES closed its New York City offices in November 2012, and surrendered its registration as a foreign limited liability company to New York State on January 11, 2013.[6] UGES vacated its office space in Chicago in July 2013, and was no longer in good standing in the State of Illinois as of January 1, 2014.[7] UGES argues that, "[w]hile [UGES] is winding down its operations, it continues to be headquartered and domiciled in the jurisdiction in which it was always headquartered and domiciled: Illinois."[8]

### B. The Sales Order and Alleged Breach

By a sales order dated September 10, 2012 (the "Contract"), Rothsay agreed to sell UGES roughly 500,000 gallons of Methyl Esters for $4.22 per gallon.[9] The Contract was negotiated and executed in Canada by Rothsay and in Chicago by UGES.[10] The Contract provided that Rothsay would deliver five

---

[6]   *See* Pl. Opp. at 3.

[7]   *See id.* at 3-4.

[8]   Reply Mem. at 10.

[9]   *See* Sales Order 9/10/12 (the "Contract"), Ex. A to Compl.

[10]  *See* Declaration of Jonathan Payne, UGES member and employee, ¶ 6.

railcars of Methyl Esters to UGES per month for a total of four months.[11] UGES would pay either in advance or within ten days of each shipment.[12] The Contract listed the origin of the shipments as Sainte-Catherine, Canada, and the final destination as New Hyde Park, New York.[13] It further established that the risk of loss would shift from Rothsay to UGES at the transfer point in Laurenco, Canada.[14]

From mid-September 2012 through mid-October 2012, Rothsay sent six railcars to UGES through four separate shipments.[15] Although UGES accepted all of the shipments, it only paid $39,000 of the total amount due, leaving $590,121.80 outstanding.[16]

On or before November 6, 2012, Jay Pierce, a former co-managing member of UGES, admitted by email that UGES owed Rothsay approximately $590,000 for the six railcars.[17] Pierce also advised Rothsay by telephone that

---

[11] *See* Contract. Each railcar holds 25,000 gallons of Methyl Esters. *See id.*

[12] *See id.*

[13] *See id.*

[14] *See id.*

[15] *See* Compl. ¶¶ 10-16.

[16] *See id.* ¶¶ 11, 20.

[17] *See id.* ¶ 22.

UGES was insolvent and would be unable to pay the balance due or to accept further shipments under the Contract.[18]

In addition to the $590,121.80 owed on the six railcars, Rothsay claims damages of $9,669 in storage costs and $163,599.48 in lost profits, yielding total damages in the amount of $763,390.28.[19]

## III. APPLICABLE LAW

### A. Transfer of Venue

Whether to dismiss or transfer an action "lies within the sound discretion of the district court."[20] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." In order to transfer an action under section 1404(a), the moving party must satisfy two requirements.[21] *First*, the transferee court must have

---

[18] *See id.*

[19] *See id.* ¶¶ 23-24.

[20] *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

[21] *See Markel v. Sweeney*, No. 12 Civ. 3555, 2012 WL 2930194, at *5 (S.D.N.Y. July 9, 2012) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988)).

jurisdiction over the parties and must be an appropriate venue for the action.[22] *Second*, the balance of justice and convenience must favor transfer.[23] The second requirement "'is essentially an equitable task' left to the Court's discretion."[24] District courts have "wide discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"[25] "The moving party bears the burden of showing, by clear and convincing evidence, that a transfer is appropriate."[26]

To determine whether "the balance of justice and convenience" favors transfer, the court should consider: (1) the plaintiff's choice of forum; (2) the convenience of witnesses and the availability of process to compel the attendance of unwilling witnesses; (3) the location of relevant documents and ease of access to sources of proof; (4) the convenience and relative means of the parties; (5) the

---

[22] *See id.* *See also* 28 U.S.C. § 1391(b)(2) (providing that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated").

[23] *See id.*

[24] *Id.* (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).

[25] *Thyssenkrupp Materials N.A., Inc. v. M/V Fed. Shimanto*, No. 13 Civ. 1543, 2013 WL 3947749, at *2 (July 30, 2013) (quoting *Stewart*, 487 U.S. at 29).

[26] *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

locus of operative facts; (6) the forum's familiarity with the governing law; and (7) trial efficiency and the interests of justice, based on the totality of the circumstances.[27]

Not all of the factors merit equal weight. The convenience of witnesses is the most important factor in deciding whether to transfer an action.[28] The location of documents, on the other hand, is "not a compelling consideration when records are easily portable."[29] For the purpose of determining the locus of operative facts, a court may make reasonable assumptions regarding the location of events if they are not clearly specified in the Complaint.[30]

## IV.   DISCUSSION

### A.   Jurisdiction and Venue in the Northern District of Illinois

---

[27]   See *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 617 (S.D.N.Y. 2011). See also *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (listing factors 1–5 as "some" of the factors to consider).

[28]   See *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). See also 17 James Wm. Moore et al., Moore's Federal Practice § 111.13[1][f][i] (3d ed. 2005).

[29]   *KPMG Consulting Inc. v. LSQ II, LLC*, No. 01 Civ. 11422, 2002 WL 1543907, at *4 (S.D.N.Y. July 12, 2002) (internal quotations omitted). Accord *Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("In today's era of photocopying, fax machines and Federal Express, the location of documents factor is neutral.") (internal quotations omitted).

[30]   See *Alonso v. Saudi Arabian Airlines Corp.*, No. 98 Civ. 7781, 1999 WL 244102, at *7 (S.D.N.Y. Apr. 23, 1999).

UGES seeks transfer to the District Court for the Northern District of Illinois, Eastern Division. The Northern District of Illinois would have personal jurisdiction over UGES because UGES's principal business address is in Chicago,[31] UGES was served in Chicago,[32] and UGES consents to personal jurisdiction in the district.[33] The Northern District of Illinois would be a proper venue for this action because a substantial part of the events giving rise to the claims occurred there.[34] The Court must therefore decide whether the balance of justice and convenience favors transfer through an analysis of the following factors.[35]

**B.   Balance of Justice and Convenience**

**1.   Plaintiff's Choice of Forum**

In general, a court should not disturb a plaintiff's choice of forum

---

[31]   *See* Compl. ¶ 2.

[32]   *See* Declaration of Robert Regalado, licensed private investigator and process server, ¶ 5.

[33]   *See* Reply Mem. at 7 ("If this case is transferred to Chicago . . . Ultra Green will not . . . contest personal jurisdiction or venue.").

[34]   *See* 28 U.S.C. § 1391(b)(2).

[35]   *See Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012).

"unless the balance of the factors weighs strongly in favor of transfer."[36] However, a "plaintiff['s] choice of forum is accorded less weight where the plaintiff['s] chosen forum is neither their home nor the place where the operative facts of the action occurred."[37] Because Maple Leaf is a foreign plaintiff, its choice of forum "deserves less deference" than if Maple Leaf had chosen its home forum.[38] Therefore, this factor weighs only slightly against transfer.

### 2. Convenience of Witnesses and Ability to Compel Attendance

Maple Leaf argues that UGES has not identified any specific witnesses who would be inconvenienced by litigating in New York, and that UGES's three initial members reside in Georgia and Michigan.[39] However, UGES notes that two former managing members of UGES who were "personally responsible for Maple Leaf's injuries," Robert and Cathy Pierce, are domiciled in

---

[36] *Caville v. Malibu Toys, Inc.*, No. 03 Civ. 9727, 2004 WL 1516799, at *2 (S.D.N.Y. Jul. 7, 2004).

[37] *Matta v. Roswell Park Cancer Inst. Corp.*, No. 11 Civ. 599, 2011 WL 3104889, at *6 (S.D.N.Y. July 26, 2011) (internal quotations omitted).

[38] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 236 (1981). *Accord Employers Ins. of Wausau v. News Corp.*, No. 06 Civ. 1602, 2008 WL 4443899, at *3 (S.D.N.Y. Sept. 29, 2008).

[39] *See* Pl. Opp. at 20.

Illinois.[40] UGES also identifies several other important non-party witnesses located in Illinois, including Michelle Linton and Karen Santillian.[41] Furthermore, because the Contract was negotiated from UGES's Chicago office, any former UGES employees involved in the transaction likely live in or near Chicago.[42]

As to any Canadian witnesses, the Court takes judicial notice that New York is about fifty miles closer to Toronto than Chicago by car, and approximately the same travel time by plane. Thus, the convenience to Canadian witnesses is more or less equal between the two forums. Finally, because Chicago is over one hundred miles from New York City, this Court lacks the power to compel the attendance of Chicago-based witnesses who are unwilling to testify.[43] Therefore, this factor weighs in favor of transfer.

### 3. Location of Documents and Relative Ease of Access to Sources of Proof

UGES argues that any relevant documents are located in Illinois

---

[40] Reply Mem. at 8. UGES also contends that Robert and Cathy Pierce are necessary parties to the litigation and may not be subject to personal jurisdiction in New York. *See id.*

[41] *See id.* at 9.

[42] *See* Second Declaration of Jonathan Payne ("Second Payne Decl.") ¶¶ 9-14.

[43] *See* Fed. R. Civ. P. 45(c).

and/or Ontario and would be expensive to digitize.[44] "Because modern technology has made the transportation of documents relatively easy, [UGES] must make a convincing showing [it] will suffer any real hardship in moving documents to this district."[45] UGES has provided little support for its claim that producing documents from Illinois and Ontario would be a significant hardship. Accordingly, this factor weighs only slightly in favor of transfer.

### 4.     The Convenience and Relative Means of the Parties

"'[A motion to transfer under section 1404(a)] should not be granted if all transfer would accomplish is to shift the inconveniences from one party to the other.'"[46] Because Maple Leaf is based in Toronto, a city roughly equidistant from New York and Chicago, Maple Leaf's choice of New York as a forum affords it no added convenience. By contrast, UGES most recently operated out of Chicago and would likely suffer added expense and inconvenience by litigating in New York,

---

[44]     *See* Second Payne Decl. ¶ 8.

[45]     *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114, 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011).

[46]     *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 337 (S.D.N.Y. 2010) (quoting *Stinnes Interoil, Inc. v. Apex Oil Co.*, 604 F. Supp. 978, 984 (S.D.N.Y. 1985)).

even if it no longer conducts business in Illinois.[47] Furthermore, because UGES is allegedly insolvent, UGES is less able to sustain the added expense.[48] Accordingly, this factor weighs in favor of transfer.

### 5. The Locus of Operative Facts

"In an action arising out of a contract, the location of the operative facts is 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'"[49] Here, the shipments originated in Canada, the payments were made from Chicago, and the Contract was negotiated and executed by the parties in Canada and Chicago.[50] The only operative fact related to New York is that New York was designated as the ultimate destination for the shipments.[51] Because most of the operative events occurred in either Canada or Chicago, this factor weighs slightly in favor of transfer.

### 6. Forum's Familiarity with Governing Law

---

[47] See Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 9-10.

[48] See Compl. ¶¶ 2, 19.

[49] *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11 Civ. 6751, 2013 WL 5312525, at *6 (S.D.N.Y. Sept. 23, 2013) (quoting *AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 648 (S.D.N.Y. 2011)).

[50] See Def. Mem. at 9-10.

[51] See id.

The Contract does not contain a choice of law clause.[52] UGES argues that Illinois law should govern because it is the jurisdiction with the most "'significant relationship to the transaction and the parties.'"[53] However, both parties cite predominantly New York and Second Circuit law in their briefs, and some of Maple Leaf's claims are based on the New York Uniform Commercial Code.[54] While it is not clear at this stage which law governs, this action is unlikely to implicate any complex or novel questions of state law.[55] The forum's familiarity with governing law is "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved."[56] Therefore, assuming, arguendo, that New York law governs, this factor carries little weight in the analysis.

### 7. Trial Efficiency and the Interests of Justice

---

[52] *See* Contract.

[53] Reply Mem. at 10 (quoting *Matter of Midland Ins. Co.*, 16 N.Y.3d 536, 543-44 (2011)).

[54] *See* Compl. ¶¶ 36-59.

[55] *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 747 (S.D.N.Y. 2013) ("[Plaintiff] has not argued, nor could it persuasively, that this case turns on nuanced issues of New York state law that this Court is materially more qualified to apply than [another district] court would be.").

[56] *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004).

The majority of the relevant considerations indicate that a transfer of venue is appropriate in this case. The convenience of the witnesses, the forum's ability to compel attendance, the location of relevant documents, the convenience and relative means of the parties, and the locus of operative facts all weigh in favor of transfer. The only factors to the contrary are the plaintiff's choice of forum and this Court's relatively greater familiarity with New York law, both of which are entitled to very little weight.

Moreover, Illinois has an interest in ensuring just proceedings for its corporate residents, while New York does not have as strong as an interest in this dispute. Therefore, trial efficiency and the interests of justice will best be served by transferring venue to the Northern District of Illinois, Eastern Division. Because the motion to transfer venue is granted, I do not address UGES's motions to dismiss the Complaint. Those motions are best considered in the new forum should UGES decide to renew them.

## V. CONCLUSION

For the foregoing reasons, UGES's motion to transfer is GRANTED. The Clerk of the Court is directed to transfer this case forthwith to the Northern District of Illinois, Eastern Division.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 2, 2014

- **Appearances** -

**For Plaintiffs:**

Joshua R. Elias, Esq.
Gibbons P.C.
One Pennsylvania Plaza
37th Floor
New York, NY 10119
(212) 613-2000

**For Defendant:**

Robert J. Tolchin, Esq.
The Berkman Law Office, LLC
111 Livingston Street, Suite 1928
Brooklyn, NY 11201
(718) 855-3627